Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Massachusetts

### Division

| | | |
|---|---|---|
| **Jamhal Talib Abdullah Bey** | ) | Case No. _____ |
| | ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| **-v-** | ) | |
| | ) | |
| | ) | |
| **Associate Justice James H. Budreau** | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | | |

FILED
IN CLERKS OFFICE
2022 NOV 14 PM 12: 08
U.S. DISTRICT COURT
DISTRICT OF MASS.

## COMPLAINT AND REQUEST FOR INJUNCTION

**I.      The Parties to This Complaint**

    **A.      The Plaintiff(s)**

        Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Jamhal Talib Abdullah Bey |
| Street Address | 240 Broadway |
| City and County | Pawtucket / Providence-County |
| State and Zip Code | Rhode Island 02860 |
| Telephone Number | |
| E-mail Address | |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

**B.**     **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | James H. Budreau |
| Job or Title *(if known)* | Associate Justice |
| Street Address | 200 Tradecenter Dr |
| City and County | Woburn |
| State and Zip Code | Massachusetts 01801 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

E-mail Address *(if known)* [                                                    ]

## II.  Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☒ Federal question                    ☐ Diversity of citizenship


Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

> 28 U.S.C 1331; US Const Art 3 Sec 1

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* [                                ], is a citizen of the State of *(name)* [                            ].

b.    If the plaintiff is a corporation

The plaintiff, *(name)* [                                ], is incorporated under the laws of the State of *(name)* [                                ], and has its principal place of business in the State of *(name)* [                            ].

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* [                                ], is a citizen of

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

the State of *(name)* [                                ]. Or is a citizen of

*(foreign nation)* [                            ].

    b.    If the defendant is a corporation

The defendant. *(name)* [                                ]. is incorporated under

the laws of the State of *(name)* [                            ]. and has its

principal place of business in the State of *(name)* [                        ].

Or is incorporated under the laws of *(foreign nation)* [                        ]

and has its principal place of business in *(name)* [                        ].

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

[                                                                                        ]

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

    A.    Where did the events giving rise to your claim(s) occur?

A motion to suppress was heard by Associate Justice James H. Budreau and a decision to deny the motion was made June 16th 2022. An appeal was filed with the SJC was timely filed September 30th 2022.

    B.    What date and approximate time did the events giving rise to your claim(s) occur?



Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

August 30th 2022 the Appeal was opened and the appeal for leave to proceed without prepaying filing fees was approved. Supreme Judicial Court for Suffolk County No. SJ-2022-0388

C.   **What are the facts underlying your claim(s)?** *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

October 21st 2022, an order denying the application for interlocutory appeal was sent for the claim that the motion to suppress "will not advance the administration of justice. The defendnant, if he were to be convicted, must await final disposition before seeking full appellate review…" The nautr of the appeal was a claim regarding 4th amenemdnt rights violations; abuse of descretion and Associate Justice James H. Budreau discriminationg agaisnt the defendant. This is further explained in the claim sheet attached.

## IV.   Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

A violation of a constitutional right is not tangible. And the courts are essentially willing to waste time, effort, money, court resources et cetera, when justice can be administered with the granting of the motion to suppres because the 4th amendment was clearly violated and there would be no need for a trial. As the evidence, if suppressed, would leave the prosecutor with no means to substantiate its burden of proof at trial.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

I ask that the Courts read all the filings I made in regards to the motions, specifically the motion to suppress, read the courts reason to deny it and review the video footage and reverse the courts decision, based on case law, the facts and the video footage, with the proper context of probable cause and reasonable suspicion, not based on hindsight. Most of the courts reasoning is not based on what the Trooper said on the stand nor is it based on the video footage. This is clearly an abuse and an error of law.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     11/9/22

Signature of Plaintiff     *Jamhal Talib Abdullah Bey*

Printed Name of Plaintiff     *Jamhal Talib Abdullah Bey*

### B.    For Attorneys

Date of signing:

| | |
|---|---|
| Signature of Attorney | n/a |
| Printed Name of Attorney | n/a |
| Bar Number | n/a |
| Name of Law Firm | n/a |
| Street Address | n/a |
| State and Zip Code | n/a |
| Telephone Number | n/a |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

E-mail Address

n/a

Commonwealth of Massachusetts

V

Jamhal Talib Abdullah Bey [*Pro Se*]

## AFFIDAVIT OF FACT

HERENOW comes Jamhal Talib Abdullah Bey, filing this appeal based on the following. This affidavit and the arguments there in are made to the best of my ability.

## JURISDICTION OF THE FEDERAL COURT

The defendant asserts that his 4th amendment right was violated during the interaction with the police. The defendant is asking the courts to rule on a motion, which is a civil matter, as the motion pertains to violations of constitutional rights, which the courts have jurisdiction over under 29 USC 1331 which is based on US Const Art 3 Sec 1.

## EXHAUSTION OF STATE ADMINISTRATIVE REMEDIES

1. A motion to suppress was heard by Associate Justice James H. Budreau and a decision to deny the motion was made June 16th 2022. An appeal was timely filed with the SJC September 30th 2022.

2. August 30th 2022 the Appeal was opened and the appeal for leave to proceed without prepaying filing fees was approved. Supreme Judicial Court for Suffolk County No. SJ-2022-0388

3. October 21st 2022, an order denying the application for interlocutory appeal was sent, for the claim that the motion to suppress "will not advance the administration of justice. The defendnant, if he were to be convicted, must await final disposition before seeking full appellate review…" The nature of the appeal was a claim regarding 4th amenemdnt

rights violations; abuse of descretion and Associate Justice James H. Budreau discriminationg agaisnt the defendant.

## NATURE OF THE CASE

This case regards an interaction between the State police and members of the community which resulted in the Inter-state 95 North bound Highway being blocked for approximately 11 hours and the arrest of 11 individuals. The defendants are being charged with, inter alia, *the unlicensed possession of a fire-arm; unlicensed possession of high-capacity magazines; wearing of body armor during the commission of a felony; improper storage of a firearm where a minor had access; possession of ammunition without an FID card*, et alia.

The incident occurred at approximately 1:10 AM on July 3rd, 2021, near mile marker 57, near the city of Wakefield on the interstate route 95. According to the probable cause narrative provided by the commonwealth. Trooper Ryan Casey observed a black Ford transit van pulled over on the side of the highway. This caused him to pull which police cruiser behind the black ford transit van, exit his cruiser and approach the van.

As he approached the van, Trooper Casey was met by Jamhal Talib Abdullah Bey who greeted him with a hand shake, which Casey refused, and informed him about the nature of their being on the side of the road. Trooper Casey was informed that the persons in the vehicle were part of a Militia, and that the vehicles were temporarily stopped on the side of the road so that fuel can be replenished in the front vehicle; and that the Militia men were enroute from Rhode Island to Maine, to privately owned land. Although admitting that he initiated an investigation in less than 3 minutes of the interaction, that he initially referred to as community caretaking, after realizing that the Militiamen needed no assistance, having no other information. Trooper Casey, after observing what he believed to be a firearm, instructed the Militia men to 'sit tight' and according to his sworn testimony, launched an investigation in order to stall, prolong the encounter, and have enough police arrive on scene to facilitate an arrest. Trooper Casey admits that the encounter with the Militiamen was cordial and the militiamen were cooperating.

13 minutes in to the community care taking turned investigative detention and de facto arrest, a municipal police officer arrived. Trooper Casey informed him of what the Militia previously mentioned to him and the Wakefield police officer signaled to Casey to 'let them go.'

As more Police arrived, Sgt McDevitt eventually arrived to the scene about an hour later and a dialog continued back and forth between the police and militiamen. Sgt McDevitt ask the Militiamen what would happen if the police placed them under arrest and a response was given in the nature of 'the police would need probable cause'. McDevitt stated 'what if I had probable cause' and a response was given that he would have to article it. When McDevitt was asked what his probable cause was, he responded with 'I don't know'. The police, after informing the Militia that it was community care taking, began to top the flow of traffic on the highway. It was later revealed that Sgt McDevitt called the STOP team before the Militia was ever placed under arrest, before McDevitt ever spoke to the defendants and before McDevitt stated that he believed that the defendants had violated any laws.

After expressing that they did not know what their probable cause was, they formed a firing line in the name of a perimeter and stated that the militiamen were under arrest. When asked what their probable cause was, they remained silent. When asked again what their probable cause was for the third time, they responded with, unlawful possession of a weapon.

The nature of the motion to suppress was arguing that the evidence obtained was in violation of the 4th amendment. This motion to suppress is dispositive as the evidence obtained from the unlawful seizure is the crux of the commonwealth's case. The commonwealth plans to use statements made during the investigative stop although no Miranda warnings were read and no articulated reason was ever given as to why a community care taking function was escalated into an investigative stop. As well as the arms retrieved as a result of the de facto arrest in violation of the 4th amendment. The motion provides detailed information regarding the facts of this case substantiated by caselaw of the commonwealth and res judicata. Yet, none of this was considered during determination of the judge.

## REQUEST TO PROCEED WITHOUT PAYING FILING FEE.

Please grant leave for this appeal to proceed without payment of the filing fee as, as a result of these charges, I have been in jail from July 3rd 2021 to July 27th 2022 after posting $8,000 bond.

## FACTS

1. "Associate Justice James H. Budreau" abused his discretion.

2. "Associate Justice James H. Budreau's" decision to deny the motions violates re judicata of the commonwealth.

3. "Associate Justice James H. Budreau's" reasoning to deny the motions are not based on the facts nor are they based on any claims I've actually made, nor are they based on the video evidence submitted at the hearing.

4. "Associate Justice James H. Budreau's" decision to deny the motions are based on his own personal prejudice.

5. On page 2 of "Associate Justice James H. Budreau's" discussion, he claims that I claim "immunity from prosecution as a "sovereign Moor". I have never made such a claim and there is no proof on the record where I claim to be a "sovereign Moor", nor proof on the record where I claim to be a "sovereign Moor and therefore immune from persecution".

6. On page 3 "Associate Justice James H. Budreau" claims that "Defendants and a few associates… "self-identified to the police as sovereigns…". There is nothing on the record where I have "self-identified as a sovereign." In fact, the Youtube videos the commonwealth claims to have entered into the record reflect that I consistently reminded the police that I am not a sovereign citizen; I am not a black identity extremist, nor am I anti-government. This clearly prejudices the fact that I am innocent until proven guilty. In the court's eyes, although not supported by evidence, I am a sovereign citizen, this view is false and is clearly influencing the court's decision.

7. "Associate Justice James H. Budreau" clearly has a personal prejudice against me. When I asked if he was going to review everything I wrote and review all of the video footage, he responded with "I unfortunately am." See Court record of May 10, 2022 – courtroom 630. Page 111 – 112: 19.

8. Trooper Ryan Casey, while under oath, admitted that prior to the police's belief that we violated any laws, the STOP team was called. This indicates a predetermined prejudice to arrest me. This also shows that I was not free to leave. See page 51 – 52.

9. Trooper Casey then, immediately after stating that McDevitt called for the STOP team prior to the police having any knowledge of any laws being violated and refers to the interaction between us and him as "community care taking"; also admits that he was not directly threatened by me. This further shows a prejudice against me and proves that I was detained unconstitutionally. See page 52 line 4 – 25 and page 53 line 1 – 9.

10. When asked if my behavior indicated any criminal activity, trooper Casey responded with "You were holding a fire... a long weapon Route 95 so I'd say yes." This was clearly Casey's claim of probable cause and or reasonable suspicion, proving that the community care taking function was terminated as soon as the Trooper laid eyes on us, although the Court ruled that no probable cause or reasonable suspicion was needed because the interaction was allegedly consensual. See page 5 "...there is no other explanation available given the totality of facts including the body camera video." See also Commonwealth v Alvarado, 423 Mass 266: "Carrying a gun is not a crime... under the fourth Amendment the mere possession of a gun was not sufficient to give rise to a reasonable suspicion that the defendant was illegally carrying the gun."

11. Trooper Casey's prejudice against me and assumption that I was a sovereign citizen caused him to violate my fourth amendment right to due process of law. When asked what a sovereign citizen is, he stated that he believed I was a sovereign citizen because I stated that the police would have to have probable cause to arrest me. See page 54; 9 -24. The constitution is prima face evidence that the police need probable cause for an arrest.

Page 5 of 11

12. Trooper Casey showed prejudice yet again when asked if at a certain point in time, did he indicate that the only problem was that there were no licensed drivers; he responded in the affirmative. When asked if he could have looked up the names of the divers we had, to see if the licenses were valid and responded with "Its under officer's discretion if... we felt it is valid." A police officer cannot invalidate a valid license based on his own discretion. See page 58; 9 – 22.

13. Trooper Casey then stated on the record that he felt there were other things at hand other than the matter of licensed drivers and indicated that the 'other things at hand' were that he "saw people standing on the side of the highway with rifles... not giving up names, some with no ID's in hand, and I felt that this... you know, I don't know." See Page 59; 4 – 22. Commonwealth v Alvarado 423 Mass 266. Supreme Judicial Court of Massachusetts. "Carrying a gun is not a crime... This court held in Commonwealth v. Couture, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990), that, under the Fourth Amendment, "[t]he mere possession of a handgun was not sufficient to give rise to a reasonable suspicion..." See Commonwealth v. Toole, 389 Mass. 159, 163-164 (1983) ("carrying a .45 caliber revolver is not necessarily a crime" and thus there was no probable cause to search vehicle)

14. Despite Trooper Casey's claim to not knowing what was going on, and not having reasonable suspicion, as not giving up one's name and not having an ID does not cause reasonable suspicion, nor does the mere possession of a firearm. He, in violation of my right to due process, stated on page 60; 7, that he was investigating me.

15. Trooper Casey admits that by trying to 'figure out what was going on', that he was investigating me. This means that after he told us to sit tight (in less than 3 minutes with no additional information), we were seized, as an investigative detention is a seizure. But the court states that "The troopers had not... detained or arrested anyone..." In a Massachusetts Administration and Operations Manual, in referencing the Massachusetts Police Accreditation Standards [61.1.7], the term "investigative detention" includes what is commonly called a "Threshold Inquiry and is derived from Terry v Ohio." But Casey's

claim to probable cause based on the possession of a firearm is not sufficient to lead to an investigative detention nor an arrest. See page 60 line 2 – 7. Answer at 7 by Trooper Casey "I would say that's an investigation, yes."

16. The Court also claims that my argument of the trooper turning the community care taking into an investigation is based on the second amendment, and it is not. It is based on the case law from Massachusetts that I made reference to in the motions that I filed, which the Court showed discontent in reading, this leads me to believe, and based on the facts that he did not address any of the case law I referenced, that he did not fully consider my argument at all.

17. The Court also claims on page 6, that I argue that Massachusetts has no authority to prohibit residents from traveling from other states, which do not require licenses to carry firearms, through Massachusetts to another no license state. I never made this claim, I merely provided case law from the commonwealth and the united-states code showing how it was permitted by both state and federal law. This again leads me to believe that the court did not fully read or attempt to comprehend my argument based on the prejudice and brand of the belief that I am a sovereign citizen, which I am not.

18. The Court claims that I was not simply traveling through the commonwealth and claims that I was carrying a loaded firearm on the side of the road. And states that Trooper Casey had reasonable suspicion to believe that a fire arms violation occurred. But Trooper Casey never clearly articulated what his reasonable suspicion was other than possession. See Commonwealth v Alvarado, 423 Mass 266: "Carrying a gun is not a crime… under the fourth Amendment the mere possession of a gun was not sufficient to give rise to a reasonable suspicion that the defendant was illegally carrying the gun."

19. The court is using the political rhetorical 'Ad Hominem' strategy. Whereas, their denial of my motions, which are supported by both federal and the Commonwealths res judicata, is not based on deduction, caselaw, precedent, the facts, res judicata nor syllogism. They are

merely based on informal logic. It is simply based on the assertion that the courts made of me being a 'Sovereign Moor', my 'comprehension' or 'interpretation of law is wrong'. But no proof to these statements is provided in the courts rational.

In essence, Trooper Casey believes he has probable cause within the first three (3) minutes of the interaction with us for an investigation, and under oath admits that within that time frame, he launched an investigation simply based on his observation of firearms. He knew absolutely nothing else. Mere possession of a firearm is not sufficient to establish reasonable suspicion for an investigatory detention according to the Massachusetts case law already provided to the courts.

See page 67 line 5 – 12. Q "Between the time you pulled your police cruiser over and when you said, "sit tight," you observed no unlawful activity, is that correct? Answer by Trooper Casey "I had a suspicion that there was unlawful activity going on but I wanted to continue in the investigation." Q "So it was an investigation?" A "Once I had the suspicion, yes."

This means, the totality of circumstances to be determined if there is in deed or in fact reasonable suspicion to justify the investigation of us must be based on the time frame between the time trooper Casey pulled his police cruiser over and when he said, "sit tight," as this is the time when he believes to have had reasonable suspicion. This claim to reasonable suspicion is the threshold and the sole foundational argument for the commonwealth to justify all subsequent action. The courts did not consider this, nor the trooper's statements on the record and it was not addressed in their rational or reasoning to deny my motions. This is a vital, crucially important information and testimony that must be addressed.

The record clearly shows that we were seized for this detention. The record shows that the STOP team was called before we were ever told we were under arrest and before the police had full knowledge of any violations of statutes.

Within 3 minutes the record clearly shows a violation of due process, and violation of the fourth amendment merely based on a hunch. It is well settled law that an officer must articulate

his / her reasonable suspicion and or probable cause to justify their actions. Trooper Casey has not and the Commonwealth has failed to sustain its burden of proof to establish that fact and has not clearly articulated or substantiated their burden of articulating their reasoning.

The commonwealth and the court relies on the benefit of hindsight, after the violation of the fourth and fifth amendment, to establish probable cause and or by justifying that the interaction was consensual despite the arguments that ive made supported by the facts of this case and video evidence and despite the Trooper on the scene stating himself that he launched an investigation. An investigation is not a consensual interaction with the police, that is an illogical fallacy. Even in the absence of any articulable crimes being committed within the first three minutes of police interaction. The commonwealth is simply relying on the possession of arms as reasonable suspicion and nothing else. This is insufficient to escalate community care taking to an investigatory detention, this is insufficient to call the STOP team and the rational that "the police were outnumbered" is insufficient to establish probable cause or reasonable suspicion of anything. The population to police ratio will often prove that in general the police are outnumbered. This can't contribute at all to the determination of probable cause; especially if the police are conducting "community care taking". The commonwealth and the courts call it community care taking and a consensual interaction. But Trooper Casey calls it an investigation. It can't be both. It is well established law that community care taking is, just that, and is not an investigation into criminal activity. All of these arguments were made in the original motion with supportive facts and case law and it was not considered nor rebutted fact for fact nor was the troopers own testimony that he was investigating us within 3 minutes of an 11 hour event. Most of the courts rational to dismiss the motions do not address the arguments I've made nor the testimony of Casey. The courts simply make the statement that I believe I'm sovereign or that I misinterpret the law to support their rational. But the court in no way addresses the case law I reference to support my argument, nor does the court provide any substantial support for those claims. Many of the court's argument were not relevant to the issue being discussed nor were they substantiated in any way.

When police officers have the reasonable suspicion necessary to justify an investigative stop, the suspect is not free to walk away. Yet the court states we were not seized, contrary to Trooper Casey, the officer at the scene, who asserts that he started his investigation after he told

us to "sit tight". And the fact that the STOP team was called prior to an decleration of arrest or assertion into the belief that a crime was being committed.

Investigative detention is a temporary seizure of a suspect, as clearly indicated on record, Trooper Casey was prolonging the interaction until more police showed up to arrest us by force. This occurred within the three-minute time frame. See page 68 line 10 – 23; page 31, line 20. Answer by Trooper Casey "I was trying to gather information on everyone and I was essentially stalling until we get, you know, more people there to logistically take – take these people into custody while also gathering information." This indicates a predetermined prejudice to arrest me. This also shows that I was not free to leave.

Meaning the investigatory detention was a de facto arrest. This occurred only after 3 minutes of initial contact with Trooper Casey. We were submitting to the presence of police authority knowing that 1. We are 3 times more likely to be murdered by police and 2. Fleeing from the police has been used to justify probable cause or reasonable suspicion into criminal activity, which we were not engaged in.

## INTERLOCUTORY INJUNCTIVE RELIEF SOUGHT

I ask that the Courts conduct a de novo review of all the filings I made in regards to the motions, specifically the motion to suppress, read the courts reason to deny it and review the video footage and reverse the courts decision, based on case law, the facts and the video footage, with the proper context of probable cause and reasonable suspicion, not based on hindsight. Most of the courts reasoning is not based on what the Trooper said on the stand nor is it based on the video footage. This is clearly an abuse and an error of law.

The granting of the motion to suppress is in the interest of the administration of justice. Particularly the defendants right to due process of law. Deciding if a police officer violated a defendant's constitutional right cannot be dismissed as not in the interest of justice. As the evidence, if suppressed, would leave the prosecutor with no means to substantiate its burden of proof at trial. Thereby avoiding a lengthy trial, which three were approximately 107 members of law enforcement, including members from Hew Hampshire, the FBI, and 11 defendants.

To save the courts time, I did not make the same arguments that were made in the motion as I don't think it proper to re-assert the same claims in a motion that is already lengthy.

Made under the same aforementioned conditions of perjury.

I Am Jamhal Talib Abdullah Bey [Please excuse my hand written notes written on the decision]